### EPPENS, SMITH CO., Inc., v. SILVER LINE, Ltd.

#### No. 10019.

Circuit Court of Appeals, Fifth Circuit.

June 16, 1942.

Rehearing Denied July 20, 1942.

Eberhard P. Deutsch and Harry F. Stiles, Jr., both of New Orleans, for appellant.

Lloyd A. Ray and Jas. Hy. Bruns, both of New Orleans, La., for appellee.

Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

HOLMES, Circuit Judge.

In December, 1938, appellant shipped 541 chests of tea aboard appellee's freighter Silverteak from Batavia, Dutch East Indies, to New York. When the cargo was unloaded in New York nine chests were found to have been damaged by ship's sweat. This libel was filed against the carrier to recover damages for loss of the tea, and upon trial the court below dis-

missed the action and entered judgment for the carrier; from that judgment this appeal was brought. The only question to be decided is whether or not the carrier sustained the burden, imposed upon it by Section 4, subsection (2), paragraph (q), of the United States Carriage of Goods by Sea Act, of proving that neither its actual fault or privity nor the fault or neglect of its agents or servants contributed to the loss.[1]

Some of the facts are stipulated, and most of the remaining evidence is free from conflict; but the parties draw widely different and contradictory inferences as to the ultimate facts upon which the decision turns. Appellant argues that the evidence shows negligence on the part of the carrier and crew in several particulars: (1) that the between-deck space where the tea was stored was improperly ventilated; (2) that the between-deck ventilators were inadequate in number and improperly spaced; and (3) that the tea was improperly stowed and dunnaged. Appellee contends that the evidence shows the sweating resulted from a peril of the sea, for which no liability could be imposed upon it,[2] and that no negligence on its part caused or contributed to the damage.

Taking the evidence as a whole, we think appellee sustained the burden upon it, and proved by a preponderance of the evidence that the damage was not caused by any fault or neglect attributable to it or its servants. En route to New York the vessel put in to Dakar, French West Africa, and then proceeded to Halifax, Nova Scotia. Six days prior to reaching Halifax she encountered very heavy weather that continued, except for a twelve-hour lull, for more than four days. The weather was so severe that teak-wood on the lower bridge was crushed, awning stanchions on the port side of the boat deck were bent, lifeboat chocks were broken, the life buoy rack was smashed, the wind ranged between fifty and sixty-five miles per hour, and other damage was done. The second officer testified that it was the heaviest weather encountered during the twenty-one months he had sailed on the Silverteak, although she customarily plied the hurricane zone in the East Indies trade.

During such weather it was imperative that the hatches and ventilators be kept closed. During the same period of time the vessel passed from the warmth of the gulf stream to the cold of the Labrador current. The sudden drop in temperature induced condensation of moisture and excessive sweating in the holds of the ship. These facts, which were undisputed, show that for several days in succession it was impossible to ventilate the hatches sufficiently to prevent the formation of ship's sweat in quantities adequate to damage some portion of the cargo. No negligence could be imputed to appellee or its crew arising therefrom, nor is there any evidence upon which to base an inference of negligence against the appellee in other respects contributing to the damage. We do not consider the entries made in the scrap log to be contradictory of the testimony of the ship's officers in regard to the ventilation of the holds. It is plain that the log entries were recordings of static conditions existing during the watches, as well as overt acts taking place at the time recorded, and that such entries have no force to show that ventilation was not provided for whenever practicable and not otherwise. Moreover, the evidence preponderates in favor of the findings that the between deck was a proper place for storage of the tea; that it had four ventilators, an adequate number, well spaced; and that appellant's tea was properly stowed and dunnaged.

The judgment appealed from is affirmed.

[1] The Asturias, D.C., 40 F.Supp. 168; 46 U.S.C.A. § 1304(2) (q); 49 Stat. 1210.

[2] 46 U.S.C.A. § 1304(2) (c).